CASE NO. 10-6117

---

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

MEDIACOM SOUTHEAST LLC

*Appellant*

v.

BELLSOUTH TELECOMMUNICATIONS, INC.
d/b/a AT&T KENTUCKY

*Appellee*

**On Appeal from the United States District Court
for the Western District of Kentucky**

---

## BRIEF OF APPELLANT

---

Laurence J. Zielke
Nancy J. Schook
David N. Hise
ZIELKE LAW FIRM PLLC
562 S. Fourth Street, Suite 1250
Louisville, KY 40202
(502) 589-4600
lzielke@zielkefirm.com
nschook@zielkefirm.com
dhise@zielkefirm.com
*Counsel for Intervening Plaintiff – Appellant
Mediacom Southeast LLC*

ORAL ARGUMENT REQUESTED

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................ii-iv

TABLE OF AUTHORITIES ..................................................v-viii

CORPORATE DISCLOSURE FORM ...................................... ix-x

STATEMENT CONCERNING ORAL ARGUMENT................................. xi

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................. 2

STATEMENT OF THE CASE ................................................. 3-5

STATEMENT OF FACTS ..................................................... 5-18

      I.     Kentucky's Constitutional Requirements for Franchising...... 5-7

      II.    Mediacom's Cable Television Franchise................................ 7-8

      III.   AT&T's Cable Television Service......................................... 8-11

      IV.   1886 Ohio Valley Telephone Company Franchise............. 11-13

      V.     AT&T-Hopkinsville Agreement .......................................... 13-17

      VI.   The District Court's Memorandum and Opinion................. 17-18

SUMMARY OF THE ARGUMENT ....................................... 18-19

ARGUMENT ................................................................. 19-45

      I.     STANDARD OF REVIEW ON APPEAL ......................... 19-23

      II.    UNDER KENTUCKY LAW, AT&T MUST OBTAIN A
              CABLE TELEVISION FRANCHISE PRIOR TO OFFERING
              CABLE TELEVISION SERVICE TO SUBSCRIBERS ... 23-28

III.    THE DISTRICT COURT ERRED BY MAKING FACTUAL
DETERMINATIONS OUTSIDE THE RECORD PRIOR TO
DISCOVERY AND AGAINST
THE PLAINTIFF ....................................................................... 28-29

IV.    THE DISTRICT COURT MISCONSTRUED THE
SCOPE OF THE 1886 TELEPHONE FRANCHISE ......... 29-39

A.    Legal Interpretation of Franchises ............................. 30-31

B.    1886 Franchise Only Authorizes a
Telephone Business ..................................................... 31-32

C.    1886 Telephone Franchise Specifically Contemplated
the Requirement of Additional Franchises ............... 32-33

D.    In Kentucky, a Franchise for One Service does not
Authorize a Business to Occupy the Rights-of-Ways for
Another Service .......................................................... 33-34

E.    Telephony and Television have Historically been
Regulated Differently ................................................. 34-37

F.    Because AT&T will also Place Additional and Different
Burdens on the Public Rights-of-Ways, a Separate Cable
Television Franchise is Required .............................. 37-39

V.    THE DISTRICT COURT AFFORDED THE OPINION OF
THE ATTORNEY GENERAL EXCESSIVE WEIGHT IN
RULING ON THE MOTION TO DISMISS ...................... 39-40

VI.    THE COURT DID NOT CONSIDER WHETHER THE
AT&T-HOPKINSVILLE    AGREEMENT    WAS    A
"FRANCHISE"   GRANTED   IN   VIOLATION   OF   THE
KENTUCKY CONSTITUTION ......................................... 40-45

CONCLUSION .............................................................................. 46

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B) ................ 47

DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS.......................................................................................... 48-49

CERTIFICATE OF SERVICE...................................................................... 50

# TABLE OF AUTHORITIES

## CASES

*Alliance for Community Media v. Federal Communications Commission,*
    529 F.3d 763 (6th Cir. 2008)............................................................ 6, 7

*Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937,
173 L.Ed.2d 868 (2009)................................................................. 20, 21, 23

*Ball v. Am. Tel. & Tel. Co.,* 86 So.2d 42 (Miss. 1956)................................. 34

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)...................... 20, 21, 23

*BFI Waste Systems of North America, Inc. v. Huntington Woods*
    *Neighborhood Association, Inc.,* 134 S.W.3d 624
    (Ky.App. 2003)........................................................................ 25, 41, 42

*City of Bowling Green v. Davis,* 230 S.W.2d 909 (Ky. 1950) ..................... 26

*City of Louisville v. Louisville Home Tele. Co.,* 148 S.W. 13
    (Ky.App. 1912).................................................................................. 25

*City of Owensboro v. TopVision Cable Co.,* 487 S.W.2d 283
    (Ky. 1972)......................................................... 6, 25, 26, 27, 29, 38, 41

*City of Princeton v. Princeton Elec. Light & Power Co.,* 179 S.W. 1074
    (Ky. 1915)........................................................................................... 44

*Consolidated Television Cable Service, Inc. v. City of Frankfort, Ky.,* 857
    F.2d 354 (6th Cir. 1988) ................................................................... 5, 6

*Courie v. Alcoa Wheel & Forged Products,* 577 F.3d 625
    (6th Cir. 2009) ............................................................................... 19, 20

*Eastern Kentucky Resources v. Arnett,* 934 S.W.2d 270
    (Ky. 1996)................................................................................ 41, 43, 44

*First St. Bank v. Morton*, 142 S.W. 694 (Ky.App. 1912)....................... 30, 31

*Irvine Toll Bridge Co. v. Estill County*, 275 S.W. 634 (Ky. 1925) ........ 33, 34

*Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687 (6th Cir. 1999) ... 20, 28

*Louisville v. Cumberland Tele. and Tele. Co.*, 224 U.S. 649 (1912) ..... 31, 32

*Lucking v. Delano*, 129 F.2d 283 (6th Cir. 1942)......................................... 20

*Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444 (6th Cir. 2003).......... 20

*Maysville Turnpike Road Co. v. How*, 14 B.Mon. 426, 1854 WL 3779
    (Ky.App. 1854)............................................................................. 30, 33

*Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995)................................................ 20

*Office of Consumer Counsel v. Southern New England Telephone
    Company d/b/a AT&T Connecticut, Inc.*, 515 F.Supp.2d 269
    (D.Conn. 2007)............................................................. 9, 10, 11, 15

*Office of Consumer Counsel v. So. New England Tel. Co.*, 2010
    WL 744353 (2nd Cir. 2010) ................................................................ 9

*Prestonburg Water Co. v. Dingus*, 111 S.W.2d 661 (Ky.App. 1937).... 30, 33

*Ray v. City of Owensboro*, 415 S.W.2d 77 (Ky. 1967) .......................... 26, 27

*Union CATV, Inc. v. City of Sturgis, Ky.*, 107 F.3d 434 (6th Cir. 1997)........ 5

## **KENTUCKY CONSTITUTION**

Ky. Const. § 163 ....................................................... 5, 7, 23, 24, 26

Ky. Const. § 164 ........................................... 5, 7, 24, 25, 26, 33, 44

## FEDERAL STATUTES

28 U.S.C. § 1332.................................................................. 1

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 2201 *et seq.* ...................................................... 20

47 U.S.C. § 153(20)............................................................. 35

47 U.S.C. §201 *et seq* .......................................................... 35

47 U.S.C. §521 *et seq.* .......................................................... 6

47 U.S.C. § 522(6) .............................................................. 15

47 U.S.C. § 541(a)(1)............................................................ 6

## STATE STATUTES

1886 Ky. Acts, Chapter 511...................................................... 12

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6) .................................................... 4, 18, 19

## FEDERAL RULES OF APPELLATE PROCEDURE

F.R.A.P. 32(a)(7)(B) ........................................................... 47

F.R.A.P. 32(a)(7)(B)(iii) ....................................................... 47

## OTHER AUTHORITIES

36 Am.Jur. 2d Franchises from Public Entities §3 ........................................ 26

36 Am.Jur. 2d Franchises from Public Entities §6 ........................................ 26

6th Cir. Rule 25(f)(1) ................................................................................... 50

6th Cir. Rule 30(b) ...................................................................................... 48

Goodale and Frieden, *All About Cable and Broadband*, Law Journal Press
(2010).................................................................................................... 35

H.R. Rep. No. 98-934 reprinted in 984 U.S.C.C.A.N. 4655 ........................ 35

Hopkinsville Code of Ordinances, § 33.175................................................... 8

Hopkinsville Code of Ordinances, Chapter 100 ...................................... 7, 44

Hopkinsville Code of Ordinances, § 100.01................................................ 15

Hopkinsville Ordinance §100.02(A) ........................................................... 43

Implementation of Section 621(a)(1) of the Cable Communications Policy
Act of 1984 as amended by the Cable Television Consumer
Protection and Competition Act of 1992, Report and Order
and Further Notice of Proposed Rulemaking,
22 F.C.C. Rcd. 5101 (2006) ................................................................. 36

OAG 08-007..................................................................................... 39, 40

Second Report and Order, 22 F.C.C. Rcd. 19633 (2007)............................ 36

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 10-6117 _____    Case Name: Mediacom Southeast LLC v. BellSouth _____

Name of counsel: Laurence J. Zielke _____

Pursuant to 6th Cir. R. 26.1, Mediacom Southeast LLC _____
<span style="text-align:center">*Name of Party*</span>
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes. Mediacom Southeast LLC is organized under Delaware law and operating in Kentucky as a foreign limited liability company. Mediacom Southeast LLC is a single member limited liability company whose interests are held by Mediacom LCC, a New York limited liability company. Mediacom LLC is a single member limited liability company whose interest are held by Mediacom Communications Corporation, a publicly traded Delaware corporation.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> Yes. Mediacom Communications Corporation, which is the sole member of Mediacom LLC, which is the sole member of Mediacom Southeast LLC.

---

### CERTIFICATE OF SERVICE

I certify that on _____ September 20, 2010 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Laurence J. Zielke _____
462 South Fourth Street, Suite 1250 _____
Louisville, KY 40202 _____

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## STATEMENT CONCERNING ORAL ARGUMENT

Mediacom Southeast LLC ("Mediacom") requests oral argument of this appeal.  Mediacom believes oral argument will assist the Court in considering the facts and arguments presented in this appeal.

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Kentucky had subject-matter jurisdiction of the action below pursuant to 28 U.S.C. § 1332.  City of Hopkinsville filed the action in Kentucky state court and the defendant, Bellsouth Telecommunications, Inc., d/b/a AT&T Kentucky ("AT&T"), removed the action to the federal district court.  Mediacom intervened in the federal court action.  City of Hopkinsville voluntarily dismissed its claims with prejudice on January 12, 2010.  AT&T filed a Motion to Dismiss Mediacom's Amended Intervening Complaint that was granted by the district court.  From that decision, Mediacom brings this appeal.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1291.  This is an appeal from a final decision of the district court that disposed of all parties' claims.  The final decision appealed from was entered on August 17, 2010.  Mediacom's notice of appeal was filed on September 3, 2010.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

Did the district court err in dismissing Mediacom's Complaint after construing the facts against Mediacom and holding AT&T's 1886 telephone franchise included the grant of a cable television franchise?

## STATEMENT OF THE CASE

City of Hopkinsville filed the civil action below in the Christian Circuit Court, Christian County, Kentucky.  City of Hopkinsville's Complaint included a count for declaratory relief arising from AT&T's offering of cable television services in Hopkinsville, Kentucky without first obtaining a cable television franchise separate from its state-wide telephone franchise.  Complaint, Exhibit 1 to Defendant's Notice of Removal, Record Entry (hereinafter, "R.E.") No. 1.  Defendant removed the action to the United States District Court for the Western District of Kentucky.  Notice of Removal, R.E. No. 1.

Local incumbent cable television franchisees, Mediacom and Telecommunications Management, LLC d/b/a NewWave Communications ("NewWave"), intervened in the district court.  Motion to Intervene, R.E. Nos. 6 and 18.   Subsequently, both City of Hopkinsville and NewWave voluntarily dismissed their claims.  Notice of Voluntary Dismissal, R.E. Nos. 12 and 28.

Through its Amended Intervening Complaint, Mediacom sought several declarations from the District Court.  Mediacom sought a declaration that:

- AT&T's perpetual 1886 statewide telephone franchise does not grant the offering of cable television services;

- AT&T must apply for a separate franchise for cable television service before it may begin offering cable television service in Hopkinsville; and,

- the "agreement" entered into by AT&T and the City of Hopkinsville is a "franchise" as defined by the courts of Kentucky, but was obtained without Kentucky's constitutionally required public advertisement and bidding procedures and is thus void as a matter of law.

Mediacom also sought an order requiring AT&T to obtain an appropriate cable television franchise prior to offering cable television services in Hopkinsville. Amended Intervening Complaint ¶¶ 35, 42, 45, and 48-55, R.E. No. 24.

AT&T moved to dismiss Mediacom's Amended Intervening Complaint. Motion to Dismiss, R.E. No. 32; Response to Motion to Dismiss, R.E. No. 36. The district court granted the motion and dismissed Mediacom's Amended Intervening Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

4

Memorandum Opinion and Order, R.E. Nos. 39 and 40.  Mediacom timely appealed the improper dismissal.  Notice of Appeal, R.E. No. 41.

## STATEMENT OF FACTS

Mediacom's Amended Intervening Complaint seeks relief pursuant to the Kentucky Constitution §§ 163 and 164 and related case law.  Mediacom holds a franchise to offer multi-channel video programming using the public rights-of-ways ("cable television") within the boundaries of Hopkinsville. Complaint ¶5, R.E. No.24.

I.    Kentucky's Constitutional Requirements for Franchising

Kentucky's 1891 Constitution mandates all public utilities to obtain specific franchises before operating within the public rights-of-ways and vests exclusive authority in granting such franchises to the legislative bodies of such city or town containing the public rights-of-ways in question. Complaint ¶6, R.E. No. 24; Ky. Const. § 163.  In *Union CATV, Inc. v. City of Sturgis, Ky.*, 107 F.3d 434, 441 (6th Cir. 1997), this Court recognized "the critical role of municipal governments in the franchise process."  This Court also found "a 'clearly articulated and affirmatively expressed' state policy to allow municipal regulation of the provision of [cable television] service..."

5

*Consolidated Television Cable Service, Inc. v. City of Frankfort, Ky.*, 857 F.2d 354 (6th Cir. 1988).

A franchise may only be granted after public bidding and must be awarded to the highest and best bidder, but the franchising authority has the right to reject any and all bids. Complaint ¶7, R.E. No. 24; Ky. Const. § 164. Furthermore, the Kentucky Constitution restricts any franchise to a 20-year term. The Kentucky Constitution allows exclusive franchises, but the exclusivity provision is preempted by the Cable Communications Policy Act of 1984, as amended, 47 U.S.C. §521 *et seq.* ("Cable Act"). 47 U.S.C. § 541(a)(1) ("a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise"). The Kentucky Supreme Court has held that cable television services are subject to Kentucky's constitutional franchising requirements. *City of Owensboro v. TopVision Cable Co.*, 487 S.W.2d 283, 286 (Ky. 1972). And, this Court recognized the holding of *TopVision* in *Consolidated Television Cable Service, Inc. v. City of Frankfort, Ky.*, 857 F.2d 354, 361 (6th Cir. 1988).

By this action, Mediacom does not seek to prevent AT&T from entering the marketplace, but only to require AT&T to comply with the Kentucky Constitution. Furthermore, as this court held in *Alliance for*

6

*Community Media v. Federal Communications Commission*, 529 F.3d 763 (6th Cir. 2008), once AT&T applies for a cable television franchise, it must be granted within a specified time period and upon limited conditions.

## II.    Mediacom's Cable Television Franchise

Mediacom's Hopkinsville cable television franchise was awarded after due advertisement and public bidding pursuant to the Kentucky Constitution.  That cable television franchise contains numerous provisions setting out Mediacom's rights and responsibilities, which provide for the orderly governance of the rights-of-ways.  Complaint ¶13, R.E. No. 24. Mediacom's cable television franchise is non-exclusive.  Complaint ¶14, R.E. No. 24.  NewWave Communications also holds a cable television franchise in Hopkinsville that was also awarded after due advertisement and public bidding pursuant to the Kentucky Constitution. *Id.*[1]

Mediacom complied with federal, state, and local law in obtaining its cable television franchise to provide cable television services to subscribers in Hopkinsville.  Mediacom is subject to and complies with additional

---

[1] Pursuant to the authority vested in it under Kentucky Constitution §§163-164, Hopkinsville enacted an ordinance setting forth the procedure for all providers of multi-channel video programming to follow in requesting a franchise and the requirements that each should meet. The ordinance passed on September 23, 1997, and is codified as Chapter 100 of the Hopkinsville Code of Ordinances.

burdens and obligations associated with obtaining a cable television franchise. Complaint, ¶¶ 21-25, R.E. No. 24. For example, Mediacom must submit to the regulation of Hopkinsville Cable Television Oversight Authority as established by the Hopkinsville Code of Ordinances at §33.175. Complaint, ¶ 26, R.E. No. 24. Mediacom must comply with a dispute resolution procedure when addressing customer complaints regarding discrimination. Complaint, ¶ 27, R.E. No. 24. Mediacom has insurance and bonding requirements. Complaint, ¶ 29, R.E. No. 24. Mediacom must meet performance and customer service standards, must protect customer privacy, cannot monitor viewing patterns without express written permission of a customer, and cannot sell subscriber lists or information. Complaint, ¶ 30-31, R.E. No. 24.


III.    AT&T's Cable Television Service

AT&T intends to offer cable television services to subscribers in Hopkinsville. AT&T refers to its service as "U-verse" in advertising. AT&T's U-verse service will allow subscribers to select video programming offered by television channels and view video programming on a television in the same manner as Mediacom's subscribers. AT&T will construct fiber-optic and twisted-pair copper lines installed in the public rights-of-ways of

8

Hopkinsville to deliver its cable television services to its subscribers. Complaint ¶¶15-18, R.E. No. 24.

In *Office of Consumer Counsel v. Southern New England Telephone Company d/b/a AT&T Connecticut, Inc.*, 515 F.Supp.2d 269 (D.Conn. 2007),[2] the Connecticut District Court analyzed AT&T's cable television service in great detail following discovery.  In that case, the district court was faced with litigation concerning the issue of whether AT&T's television service was a "cable service" under the Cable Act, which would subject AT&T to state cable regulation in Connecticut.  The Connecticut District Court concluded that AT&T's service constituted a "cable service" being offered over a "cable system" by a "cable operator," as those terms are defined in the Cable Act.  Under that holding, AT&T was required to obtain a cable television franchise.

Because no discovery was conducted in this case due to the district court's precipitous granting of the Motion to Dismiss, the description in this brief of AT&T's service is based solely on the findings of the Connecticut District Court.  In Connecticut, AT&T's cable television services use

---

[2] The Second Circuit took review of the case, but in the interim, Connecticut state law was changed so as to moot the issue.  See *Office of Consumer Counsel v. So. New England Tel. Co.*, 2010 WL 744353 (2nd Cir. 2010). Nevertheless, the analysis of the District Court is extremely persuasive and instructive on the state law issues at hand.

Internet Protocol ("IP") packetization for its digital video signals transmitted over its facilities. IP is an electronic language used to break up video programming into separate packets of data that are sent to the destination where they are reassembled by the equipment at the destination. Similarly, both AT&T and existing cable franchisees in Hopkinsville use a television set-top box as the subscriber end-user equipment.

Like Mediacom, AT&T will transmit prescheduled video programming to subscribers in Hopkinsville. The prescheduled programming provided by AT&T will be available at the same time and on the same schedule as the programming being transmitted from the programming providers such as ESPN, CNN, CBS, HBO, *etc.* Like Mediacom, AT&T will offer Video on Demand ("VOD") content, which is video programming that is stored on central computers and which can be selected through on-screen menus viewed by subscribers at a selected time on a pay-per-view basis. *Id.* at 271-272.

The Connecticut District Court found that when an AT&T subscriber wants to view prescheduled programming such as ESPN, NBC, CBS, HBO, *etc.*, the subscriber uses a remote control and a television set-top box to initiate a request to change the video stream, and that request (channel change) sends a signal from the television set-top box upstream to the

10

intermediate network office or node, and in response, AT&T's network transmits prescheduled video programming to that subscriber. *Id.* at 272. Importantly, the Connecticut District Court found that "while communication/signaling takes place upstream from the subscriber's set-top box to the network, the actual video programming runs in only one direction-downstream from the network to the customer premises..." *Id.* In the Connecticut action, AT&T admitted that no video programming travels from the customer to AT&T. The Court also determined that, aside from the internal signaling occurring between the subscriber's television set-top box triggered by a subscriber changing the channel or making a VOD selection on the remote, the result is the same as a subscriber of cable television franchisees, like Mediacom. Both IP-based service and cable television allow a subscriber to use a remote and television set-top box to change prescheduled video programming displayed on the television screen with the push of a button. Simply put, AT&T's U-verse service functions exactly like Mediacom's service.

IV.    <u>1886 Ohio Valley Telephone Company Franchise</u>

The district court erred in holding that the 1886 Ohio Valley Telephone Company Franchise allows AT&T to offer cable television

services. The Kentucky legislature approved on April 3, 1886, "An Act to incorporate the Ohio Valley Telephone Company." 1886 Ky. Acts, Chapter 511, Page No. 1174. Chapter 511, §4 provides:

> Said company shall have the power to purchase, construct, maintain and operate, within this State and elsewhere, **telephone** lines, exchanges and systems, and to conduct all the business incident and pertaining thereto, and may purchase or acquire and dispose of real estate, machinery, apparatus, poles, wires, patents or interests therein, licenses, rights and franchises relating to such business or to be used by said company therefor; and the said company may manufacture or buy, sell or lease any machinery, devices, patents or interests therein, licenses and supplies (emphasis added).

Chapter 511, §5 provides:

> The said company may construct, equip and maintain said **telephone** systems and exchanges, and erect poles and string wires thereon, and operate its **telephone** lines over, along or under any highway, street or alley in the city of Louisville, with and by the consent of the general council of said city; and it may purchase or lease from any corporation created under the laws of this Commonwealth, on such terms as may be agreed on, any **telephone** system or exchange, its poles, wires, apparatus, contracts, licenses, patents or interests therein, equipments, rights of way, easements and servitudes, in the highways, streets and alleys in the city of Louisville, together with all of its properties; and when purchased or leased shall have the power to maintain and operate the same along, over or under the highways, streets and alleys of the city of Louisville: *Provided, however,* That such **telephone** poles, lines and systems have heretofore been granted the right of way or easements in the highways, streets and alleys in the said city of Louisville by the general council thereof. And the said company

> may also construct, equip and maintain **telephone** lines along, over or under the highways, streets and alleys, and across any water-course within this Commonwealth, so as not to obstruct the same; and said company may connect its lines with those of any other company on such terms as may be agreed on (emphasis added).

AT&T failed to provide the district court the full-text of the 1886 Ohio Valley Telephone Company Franchise. Accordingly, the Court relied upon incorrect and partial references in finding that "[t]he transmission of IP video services along AT&T Kentucky's existing facilities 'is merely an advancement or improvement in the art of telegraphy and telephony (internal citations omitted).'" Memorandum Opinion, R.E. No. 39, p. 5. The district court's finding, which was required to support the Court's holding that the 1886 Ohio Valley Telephone Company Franchise allows television services, is inherently factual and patently incorrect. The Court erred by dismissing this action without allowing Mediacom any discovery to prove that cable television service is not merely an advancement or improvement in the art of telephony.

## V.   AT&T-Hopkinsville Agreement

Instead of obtaining a cable television franchise in compliance with the Kentucky Constitution, AT&T entered into an "Agreement" with Hopkinsville that allows AT&T to provide cable television services.

Complaint ¶15 and Exh. C, R.E. No. 24. Hopkinsville originally demanded that AT&T obtain a cable television franchise after due advertisement and public bidding. The AT&T-Hopkinsville Agreement, in lieu of a lawfully obtained cable television franchise, was the result of settlement between the parties in this civil action. Complaint ¶19, R.E. No. 24.

The AT&T-Hopkinsville Agreement included AT&T's self-serving description that "AT&T Kentucky is in the process of modifying its existing telecommunications network to provide an integrated Internet Protocol ("IP") enabled broadband platform of voice, data and video services ("IP Network"), the video component of which is a **switched, two-way, point-to-point and interactive service** ("IP-enabled Video Service") (emphasis added)." Complaint, Exh. C., R.E. No. 24. The district court did not explicitly make a determination regarding the accuracy of the Agreement's description of the service as two-way transmission.

AT&T's self-serving description of its video programming as two-way transmission is directly contrary to a finding made by the Connecticut District Court and the allegations set forth in Mediacom's complaint. Complaint ¶¶15-18, R.E. No. 24. Mediacom alleged in its Complaint that "AT&T's multi-channel video programming is **one-way** transmission to subscribers of video programming **allowing subscriber interaction only**

14

**for the selection or use of such video programming**; thus, it fits squarely within the definition of cable service under Hopkinsville's Ordinance." Complaint, ¶17, R.E. No. 24.  In the Connecticut case cited above, AT&T admitted that its television service it would offer is video programming that will flow "one-way, downstream, from the network to subscribers." *Office of Consumer Counsel*, at 277.  The AT&T-Hopkinsville Agreement and the district court directly contradict Mediacom's Complaint and AT&T's admission in another civil action.

Moreover, Hopkinsville's Code of Ordinance defines Cable Service at 100.01 as (1) "the one-way transmission to subscribers of: (a) video programming; or (b) other programming service; and, (2) subscriber interaction, if any, which is required for the selection or use of the video programming or other programming service."  The Hopkinsville Ordinance's definition of Cable Service mirrors the definition set forth in the Cable Act at 47 U.S.C. §522(6) as "(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming services, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service."

15

Also important to this appeal, the AT&T-Hopkinsville Agreement provides that "AT&T…is in the process of **modifying** its existing telecommunications network to provide…video services…" Complaint, Exh. C., R.E. No. 24. It also provides that the "City agrees not to unreasonably block, restrict, or limit the **construction and installation** of the IP Network" and that the "City agrees to process any and all applicable permits for the **installation, construction,** maintenance, repair, removal, and other activities associated with the IP Network in a timely and prompt manner." Complaint, Exh. C., R.E. No. 24. AT&T specifically negotiated with Hopkinsville future construction and installation of equipment in the public rights-of-ways. Therefore, the district court's finding that AT&T would be using "existing" or "current" facilities rendering a new franchise unnecessary is absolutely antithetical to the facts.

The AT&T-Hopkinsville Agreement provides that Hopkinsville will not challenge the Agreement irrespective of changes in the law regarding video service providers. Complaint, Exh. C., R.E. No. 24. AT&T agreed to pay a state tax that is only applicable to public service corporations including cable television franchisees. Complaint, Exh. C., R.E. No. 24. The AT&T-Hopkinsville Agreement is terminable at will by AT&T if it is determined that AT&T must offer its cable television service pursuant to a

16

franchise or under franchise-like requirements. Complaint, Exh. C., R.E. No. 24. AT&T agreed to indemnify and defend Hopkinsville in the event of litigation regarding the franchise requirements for AT&T's cable television service. Complaint, Exh. C., R.E. No. 24. Taken as a whole, the AT&T-Hopkinsville Agreement is actually a franchise as defined by Kentucky law, but awarded in violation of the Kentucky Constitution. This alone supports this Court's reversal of the district court.

VI.   The District Court's Memorandum and Opinion

The district court found that "[t]here is no dispute that AT&T Kentucky needs a franchise to provide IP video or television services." Memorandum Opinion, R.E. No. 39, p. 4.

However, the district court held that "AT&T Kentucky's existing franchise [the 1886 Ohio Valley Telephone Company Franchise] permits it to use its current facilities to transmit IP video services to customers in Hopkinsville, as outlined in the Agreement." Memorandum Opinion, R.E. No. 39, pp. 5-6. The district court erred by expanding the scope of the 1886 Ohio Valley Telephone Company Franchise beyond its limited grant to telephone service. The district court also erred in finding that AT&T would

17

use "existing facilities" for its cable television service. This was not a fact in the record and the court erred by construing this fact against Mediacom.

Finally, in its Memorandum Opinion, the Court failed to analyze or rule upon whether the AT&T-Hopkinsville Agreement was, in effect, a "franchise" granted in violation of the Kentucky Constitution. Mediacom pled sufficient facts to defeat a Motion to Dismiss on this issue. The district court erred by dismissing this claim without addressing it on the merits following discovery.

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that Mediacom's Amended Intervening Complaint fails to state a claim upon which relief may be granted. The district court misapplied rules of pleading and the standard of review under FRCP 12(b)(6). The district court's misapplication of these rules denied Mediacom judicial review of its properly-stated claims, and effectively immunized AT&T from judicial review of its actions despite the real and serious constitutional issues at stake. The district court improperly made factual determinations prior to any discovery by the parties, and its decision is based upon the 1886 telephone franchise that was not in the record. The citations to the 1886 telephone franchise were inaccurate and

incomplete, e.g. not including the language that AT&T may acquire additional franchises.

Because Mediacom's Complaint satisfies all applicable pleading requirements and states claims upon which relief can be granted, this Court should reverse the district court and allow Mediacom to proceed with its claims.

## ARGUMENT

The district court erred in dismissing Mediacom's Complaint. The Complaint adequately states claims upon which relief can be granted for declaratory relief and injunctive relief due to AT&T's noncompliance with the requirements of Kentucky's Constitution rendering the AT&T-Hopkinsville Agreement void.

## I.    STANDARD OF REVIEW ON APPEAL

The district court dismissed Mediacom's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  On appeal, this Court reviews *de novo* a dismissal pursuant to Rule 12(b)(6).  *Courie v. Alcoa Wheel & Forged Products,* 577 F.3d 625, 629 (6th

Cir. 2009) (*citing Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 451-52 (6th Cir. 2003)).

The Court "must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995)). The district court, however, did not accept the allegations of the Complaint as true or construe the facts in favor of Mediacom. As explained in more detail below, the Court assumed that AT&T would use "existing facilities" to provide its cable television service in interpreting both the AT&T-Hopkinsville Agreement and the 1886 telephone franchise. Moreover, Mediacom's Complaint comports with the pleading standard of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). Mediacom's allegations are not "conclusions, inferences, or innuendoes," but are well-pleaded facts upon which it may obtain the relief requested. *Lucking v. Delano,* 129 F.2d 283, 286 (6th Cir. 1942).

For its first count, Mediacom's Complaints states, "Intervening Plaintiff, Mediacom, seeks a declaratory judgment, under 28 U.S.C. 2201 *et seq.,* declaring that AT&T's 1886 telephone franchise does not include the offering of multi-channel television programming which did not exist in

20

1886." Complaint, ¶35, R.E. No. 24. Count I sets forth the constitutional authorization for franchising in Kentucky. Complaint, ¶¶ 36-39, R.E. No. 24. The first count also states, "An actual controversy exists because Mediacom has a franchise to offer multi-channel video programming within the City of Hopkinsville, and AT&T intends to offer multi-channel video programming without a franchise, and instead AT&T and the City of Hopkinsville have entered into an agreement that does not satisfy Kentucky constitutional and local requirements." Complaint, ¶40, R.E. No. 24. The district court improperly dismissed this count by finding, summarily and without any discovery on the matter, that the 1886 Ohio Valley Telephone Company Franchise authorized AT&T to offer cable television services in Hopkinsville. However, clearly Mediacom satisfied the requirements of *Twombly* and *Iqbal*, and this Court should remand this matter and allow Mediacom an opportunity to conduct discovery.

Mediacom's second count asks for a declaration that AT&T must apply for and obtain a franchise for cable television before it may offer its cable television service in Hopkinsville. Complaint, ¶42, R.E. No. 24. The second count includes: "An actual controversy exists because Mediacom has a cable television franchise to offer multi-channel video programming within the City of Hopkinsville, and AT&T intends to offer multi-channel video

programming without a cable television franchise, and instead AT&T and the City of Hopkinsville have entered into an agreement that was secretly negotiated, not advertised and not bid, and therefore, does not satisfy Kentucky constitutional and local requirements." Complaint, ¶43, R.E. No. 24. The district court found that AT&T was required to have a franchise prior to offering its cable television services in Hopkinsville.

The third count requests a declaration that "the agreement entered into by AT&T and the City of Hopkinsville is a cable television franchise as defined in Kentucky, but was obtained without the constitutionally required public advertisement and bidding procedures, and is void as a result." Complaint, ¶45, R.E. No. 24. "An actual controversy exists because Mediacom has a cable television franchise to offer multi-channel video programming within the City of Hopkinsville, and AT&T intends to offer multi-channel video programming without a cable television franchise, and instead AT&T and the City of Hopkinsville have entered into an agreement that was secretly negotiated, not advertised and not bid, and therefore, does not satisfy Kentucky constitutional and local requirements." The district court erred by not addressing this third count. The AT&T-Hopkinsville Agreement is a franchise as defined under Kentucky law, but was awarded

in violation of the public bidding and due advertisement requirements. This claim must be remanded to the district court for further proceedings.

Finally, Mediacom set forth sufficient facts in support of its claim for injunctive relief. In the event that Mediacom is entitled to its declaratory relief, then Mediacom will be entitled to an injunction precluding AT&T from acting contrary to the declarations. The Court did not address the claim for injunctive relief, and this clam must be remanded to the trial court for further proceedings with the other claims presented by Mediacom.

Because Mediacom satisfied the pleading requirements under *Twombly* and *Iqbal*, this Court should reverse the decision of the district court and remand this case for further proceedings.

## II.    UNDER KENTUCKY LAW, AT&T MUST OBTAIN A CABLE TELEVISION FRANCHISE PRIOR TO OFFERING CABLE TELEVISION SERVICE TO SUBSCRIBERS

The district court improperly rejected Mediacom's argument that AT&T must have a cable television franchise separate from the 1886 telephone franchise prior to offering cable television service to subscribers in Hopkinsville. Kentucky's Constitution requires franchises from local cities and towns for any utility occupying the rights-of-way, stating emphatically:

23

> No street railway, gas, water, steam heating, telephone or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.

Ky. Const. §163. The district court determined that before AT&T can offer television services, it must meet the franchising requirements of the Kentucky Constitution. The district court held that "[t]here is no dispute that AT&T Kentucky needs a franchise to provide IP video or television services." Memorandum Opinion, R.E. No. 39, p. 4. Mediacom agrees that AT&T must obtain a constitutionally compliant cable television franchise prior to offering cable television services in Hopkinsville.

While Section 163 declares when a franchise is required, Section 164 requires due advertisement and public bidding. Section 164 states:

> No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway.

Ky. Const. § 164. Therefore, not only is AT&T required to obtain a cable television franchise prior to offering cable television services, but AT&T must obtain a cable television franchise through the proper procedure. The City of Hopkinsville must duly advertise, receive public bids, and award the franchise to the highest and best bidder or reject all bids.

In Kentucky, "a franchise is generally defined as a right or privilege granted by a sovereign power to a party to do some act which such party could not do without a grant from the government." *BFI Waste Systems of North America, Inc. v. Huntington Woods Neighborhood Association, Inc.*, 134 S.W.3d 624 (Ky.App. 2003). A franchise "partakes of the usual incidents of a contract." *TopVision*, at 287. However, unlike a contract, there is a public interest element to franchises. *City of Louisville v. Louisville Home Tele. Co.*, 148 S.W. 13 (Ky.App. 1912). The purpose of the "highest and best bidder" language in the Kentucky Constitution is so the public receives the best service from the franchisee. In the process of obtaining a franchise, the municipality may attach conditions for the benefit of the citizenry. A "corporation's breach of [a franchise]…will presumptively result in the oppression of the citizens." *Id.* at 16. The purpose of public bidding and due advertisement under the Kentucky Constitution are to ensure that the public receive the best service available.

25

See *City of Bowling Green v. Davis*, 230 S.W.2d 909 (Ky. 1950).

Mediacom argues that because AT&T does not have a cable television

franchise that complies with Section 164 procedures, AT&T cannot offer

cable television services in Hopkinsville.

Determining what is subject to franchise depends upon the extent to

which the public is affected by the business in question. *TopVision*, *at* 286

(citing 36 Am.Jur. 2d Franchises from Public Entities §6); *see also* 36

Am.Jur. 2d Franchises from Public Entities §3. In *TopVision Cable Co.*, the

Kentucky Supreme Court concluded that cable television is subject to

franchise under the state constitution. In that case, TopVision filed an action

seeking to avoid the requirement for franchising, and the City of Owensboro

sought a declaration that the previous franchise was void so that the City

could readvertise for bids and grant a franchise to another company. The

Court, in addition to citing Sections 163 and 164 of the Kentucky

Constitution, cited *Ray v. City of Owensboro*, 415 S.W.2d 77 (Ky. 1967).

In *Ray*, the Court held that services other than those enumerated in

Section 163 of the Kentucky Constitution are subject to franchise.

Owensboro's right to require a franchise for the operation of an ambulance

service was attacked in *Ray v. City of Owensboro*. The Court held that

"…the right granted is not and properly should not be restricted to those

26

utilities enumerated, but applies to all utilities and services which might today be proper subjects for control, when the original intent and purpose of the act is considered." *Id.* at 79.

The *TopVision* Court noted that garbage collection, operation of automobile-bus lines over streets, and the right to use a part of a river bed for the extraction of sand and gravel were all subjects for franchise. *TopVision Cable Co.,* at 287. The Court went on to note, "It cannot be denied that television is an integral part of American life. It possesses many of the attributes of a public utility. It is of a public nature." *Id.* There is no dispute that AT&T seeks to offer cable television service, and that cable television is the subject of franchise under the Kentucky Constitution.

While the district court correctly held that AT&T must have a franchise in order to offer cable television services to subscribers in Hopkinsville, the district court erred in finding that AT&T's 1886 telephone franchise, which was granted prior to Kentucky's 1891 Constitution, was sufficient to comply with the Kentucky Constitution and the holding in *TopVision*, with respect to cable television services.

### III. THE DISTRICT COURT ERRED BY MAKING FACTUAL DETERMINATIONS OUTSIDE THE RECORD PRIOR TO DISCOVERY AND AGAINST THE PLAINTIFF

The district court's decision correctly held that AT&T must have a franchise to offer cable television services in Hopkinsville. The Court, however, was incorrect in finding that the 1886 Ohio Valley Telephone Company Franchise authorized the provision of cable television services in Hopkinsville. In making that finding, the district court relied on factual determinations outside of the record and not the result of discovery, which was denied to Mediacom. Despite the standard of review, which requires all facts to be construed in favor of the Plaintiff, the Court construed material factual determinations against Mediacom. See *Lawrence v. Chancery Court of Tenn.,* 188 F.3d at 691.

The district court improperly assumed that AT&T would be using "*current facilities* to transmit IP video services to customers in Hopkinsville...(emphasis added)" Memorandum Opinion, R.E. No. 39, p. 5. The decision also states, "...AT&T Kentucky would transmit IP video signals along its *existing infrastructure* to customers in Hopkinsville (emphasis added)." Memorandum Opinion, R.E. No. 39, p. 3. This was a material factual determination critical to the district court's decision that the

1886 Ohio Valley Telephone Company Franchise includes cable television services. However, that was not a fact developed through discovery.

Moreover, the evidence in the record required the opposite conclusion. The AT&T-Hopkinsville Agreement provides that "AT&T…is in the process of **modifying** its existing telecommunications network to provide…video services…" Complaint, Exh. C., R.E. No. 24. It also provides that the "City agrees not to unreasonably block, restrict, or limit the **construction and installation** of the IP Network" and that the "City agrees to process any and all applicable permits for the **installation, construction,** maintenance, repair, removal, and **other activities** associated with the IP Network in a timely and prompt manner." Complaint, Exh. C., R.E. No. 24. Therefore, the Court was in clear error in holding that AT&T would use "existing" or "current" facilities, and therefore did not need a separate cable television franchise.

## IV.    THE DISTRICT COURT MISCONSTRUED THE SCOPE OF THE 1886 TELEPHONE FRANCHISE

AT&T's argument regarding the 1886 Ohio Valley Telephone Company Franchise is at direct odds with *Top Vision* and its reasoning. The 1886 telephone franchise does not include the offering of cable television service as stated in Mediacom's Amended Intervening Complaint. The 1886

telephone franchise clearly provides that the company was granted only the right to conduct a telephone business.  AT&T argued that the 1886 telephone franchise allows it to occupy public rights of way for any "nature" of service.  The word "nature" does not appear in the 1886 telephone franchise.  AT&T's argument is simply unsupportable by the language of the 1886 telephone franchise and in clear violation of Kentucky law.

A.    Legal Interpretation of Franchises

In construing a franchise, it is construed according to the rules applicable to contracts generally.  *Prestonburg Water Co. v. Dingus*, 111 S.W.2d 661, 662 (Ky.App. 1937).  In interpreting a franchise, the court must look to the instrument as a whole.  *Id.* at 662.  In Kentucky, it is elementary that public grants are to be strictly construed.  *Maysville Turnpike Road Co. v. How*, 14 B.Mon. 426, 1854 WL 3779 (Ky.App. 1854).

Kentucky law is focused on the "ends" not the "means."  AT&T's argument that it has a universal, omnibus franchise for any service is repugnant to well-established Kentucky law and the 1886 telephone franchise itself.  Furthermore, Kentucky courts have recognized the legal maxim that looks to the substance and not the form, which correlates to the "ends" test in state franchise cases.  See *First St. Bank v. Morton*, 142 S.W.

694, 699 (Ky.App. 1912). In this case, the end product – one-way transmission of cable television service – is completely different than the end product of two-way transmission of telephone service, which is all that the 1886 franchise granted to AT&T. Or, at least, the 1886 telephone franchise is ambiguous precluding dismissal.

B.    1886 Franchise Only Authorizes a Telephone Business

AT&T offers telephone services in Kentucky under the grant of the 1886 Ohio Valley Telephone Company Franchise specifically for "**telephone purposes**" and the right to conduct a "**telephone business**." *Louisville v. Cumberland Tele. and Tele. Co.*, 224 U.S. 649, 660-61 (1912) (emphasis added). In 1912, when Louisville sought to end the franchise, the U.S. Supreme Court examined the franchise law in Kentucky and held the Ohio Valley Telephone Company held "the right to use the streets for **telephone purposes**" and again, "the right to use the streets in the city for the purpose necessary in conducting a **telephone business**." *Id.* at 660 and 661 (emphasis added).

The franchise acquired from the Ohio Valley Telephone Company and discussed in the *Cumberland Telephone* case is a specific franchise for "conducting a **telephone business**" otherwise described as a franchise "to

31

use the streets for **telephone purposes**." *Id* (emphasis added).  It is nowhere described as a franchise to provide cable television services, nor can it be so interpreted.   The district court's decision construed the 1886 telephone franchise as virtually unlimited, and did so without allowing the parties to conduct any discovery.

C.    1886 Telephone Franchise Specifically Contemplated the Requirement of Additional Franchises

The above quotations from the 1886 telephone franchise are taken from case law.  *Louisville v. Cumberland Tele. and Tele.* at 660-61.  The district court did not include any full citation to sections 4 and 5 of the franchise in its opinion.  AT&T did not tender a full text version of the franchise into the record.  Section 4 provides in full:

> Said company shall have the power to purchase, construct, maintain and operate, within this State and elsewhere, telephone lines, exchanges and systems, and to conduct all the business incident and pertaining thereto, and **may purchase or acquire** and dispose of real estate, machinery, apparatus, poles, wires, patents or interest therein, licenses, rights and **franchises** relating to such business or **to be used by said company therefor;** and the said company may manufacture or buy, sell or lease any machinery, devices, patents or interests therein, licenses and supplies (emphasis added).

Thus, it is clear that the 1886 telephone franchise contemplated that the company (now AT&T) would need to acquire additional franchises if it

expanded its business from telephony. However, the district court erred by not construing the instrument as a whole and by not strictly construing the public grant. *Prestonburg Water Co. v. Dingus* at 662; *Maysville Turnpike Road Co.* at 426.

D.    <u>In Kentucky, a Franchise for One Service does not Authorize a Business to Occupy the Rights-of-Ways for Another Service</u>

Franchises for one service cannot be constitutionally construed to allow another service. For example, a company with a garbage collection service franchise cannot provide ambulance transportation service under that franchise even though both services would use the same municipal rights-of-ways. Kentucky law requires advertising, a public bid, and granting of a franchise for each service. Ky. Const. § 164.

The issue in *Irvine Toll Bridge Co. v. Estill County*, 275 S.W. 634 (Ky. 1925) was whether a toll bridge was subject to the granting of a franchise. In *Irvine*, the court compared the toll bridge to a ferry and stated that a ferry is "only the means whereby the traveler may get across the stream..." *Id.* at 637. The *Irvine* court went on to state, "...if the right to so transport the traveler is a proper subject for the granting of the franchise, it is difficult for us to see why some other method whereby the same object could be accomplished should not also be the proper subject for the granting of a

franchise." *Id.* Because the toll bridge and a ferry both operate to move people from one side of a stream to another, the Court found that the operation of a toll bridge was properly subject to franchise requirements. *Id.* at 290.

Here, the district court erred in finding that cable television services are merely advancements in telephony. The court, relying solely on foreign cases from 1949 and 1956, found that "IP video 'is but one of many scientific achievements…which employs electrical impulses in the transmission process.'" Memorandum Opinion, R.E. No. 39, p.5 (quoting *Ball v. Am. Tel. & Tel. Co.*, 86 So.2d 42, 45 (Miss. 1956)). Telephony communications and multi-channel television programming are substantially different. There is nothing in the record to support the district court's finding, and it was improper for the district court to make such a factual finding against Mediacom without any factual support from the record.

E.     Telephony and Television have Historically been Regulated Differently

Telephony and television are different in many ways not considered by the district court, and Mediacom was not afforded an opportunity to conduct any discovery to explain and substantiate the differences to the district court. Because telephony and television differ, the two types of

34

service are subject to disparate regulatory schemes. While federal law is not at issue in this case, telephony is subject to Title II of the Telecommunications Act of 1996, 47 U.S.C. §201 *et seq*. On the other hand, cable television is subject to Title VI of the Cable Act. The Cable Act was enacted "to amend the [federal] Communications Act of 1934 to provide a national policy regarding cable television." See H.R. Rep. No. 98-934 at 18, reprinted in 984 U.S.C.C.A.N. 4655.

However, the district court assumes, without having conducted any discovery, that IP video is substantially the same as telephone. This, along with the district court construing material facts in favor of AT&T, the moving party, justifies reversal.

AT&T's deregulatory campaign is well-documented in recognized treatises. *See*, Goodale and Frieden, *All About Cable and Broadband*, Law Journal Press 5-20 – 5-20.3 (2010). Incumbent telephone companies, like AT&T, are attempting to frame their IPTV services as qualifying for minimal regulation at the federal level. AT&T and others argue that the service is an information service under 47 U.S.C. § 153(20), which is the liberal regulation scheme currently applicable to broadband cable modem access to the Internet. Classification under the information service category would supersede the requirements imposed on cable operators, like

35

Mediacom, even though commentators and courts have found that IPTV is merely a competitive alternative and functional equivalent to conventional cable television services. See Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 as amended by the Cable Television Consumer Protection and Competition Act of 1992, Report and Order and Further Notice of Proposed Rulemaking, 22 F.C.C. Rcd. 5101 (2006); Second Report and Order, 22 F.C.C. Rcd. 19633 (2007). Mediacom specifically pled a claim for a declaration that the 1886 telephone franchise did not include the offering of cable television services, and the decision construes the scope of the 1886 telephone franchise against Mediacom despite the applicable standard of review.

The district court's decision includes a rhetorical question: "In other words, how could AT&T Kentucky's franchise encompass facsimile and the Internet, but not IP video?" Memorandum Opinion, R.E. No. 39, p. 5. The Court assumes there is no difference. If the district court had properly allowed Mediacom discovery, then the evidence would have shown the difference between telephone, facsimile and the Internet's two-way transmission and AT&T's cable television service's one-way transmission. Cable television services are specifically subject to franchise in Kentucky.

Facsimile and the Internet are not subject to franchise in Kentucky, nor subject to any regulation.

Therefore, this Court must reverse the district court's decision based on the above errors of fact and law and allow this case to proceed so that Mediacom may conduct discovery and move forward in its request for declaratory and injunctive relief on the merits.

F.    Because AT&T will also Place Additional and Different Burdens on the Public Rights-of-Ways, a Separate Cable Television Franchise is Required

The district court's decision misstates that "…AT&T Kentucky's existing franchise permits it to use *its current facilities* to transmit IP video services to customers in Hopkinsville…" Memorandum Opinion, R.E. No. 39, p. 5. (emphasis added). In actuality, AT&T will add additional facilities to the public rights-of-ways in order to offer its U-verse television service, which will encumber and place additional burden on those rights-of-ways; therefore, a separate franchise is required.

The AT&T-Hopkinsville Agreement provides that "AT&T…is in the process of **modifying** its existing telecommunications network to provide…video services…" Complaint, Exh. C., R.E. No. 24. It also provides that the "City agrees not to unreasonably block, restrict, or limit the

**construction and installation** of the IP Network" and that the "City agrees to process any and all applicable permits for the **installation, construction,** maintenance, repair, removal, and **other activities** associated with the IP Network in a timely and prompt manner." Complaint, Exh. C., R.E. No. 24. That agreement presupposes that additional and different burdens will be put on the public rights-of-ways.

Mediacom alleged in its Complaint that Hopkinsville has the right to control and regulate the public rights-of-ways, and Mediacom believes discovery would confirm that AT&T will be adding significant burden to the city and the rights-of-ways by attaching large boxes and other equipment to existing utility poles solely for the provision of television services. Additionally, AT&T will be adding significant burden to the city streets through the addition of repair trucks.

The *TopVision* Court concluded that the municipality was involved in the regulation of television services, "because the cable and wires will be placed on poles and strung over public ways where existing utility companies have the right to operate by other franchises." *TopVision,* at 287. That Court also noted that the presence of television cables, even in connection with existing utilities, would be an added burden on the city. *Id.* The concept of a distinct service as an "added burden" has been developed

in other franchise case law, because Kentucky Courts have looked to the "ends" not the "means" in determining when a service is properly subject to franchise.

Therefore, given the opportunity to conduct discovery, Mediacom would prove facts that will entitle it to the relief requested, because AT&T is significantly burdening the public rights-of-ways in additional and different ways than contemplated in the 1886 telephone franchise.

## V.    THE DISTRICT COURT AFFORDED THE OPINION OF THE ATTORNEY GENERAL EXCESSIVE WEIGHT IN RULING ON THE MOTION TO DISMISS

Both the district court and AT&T recognized that the attorney general opinion, OAG 08-007, is not binding authority and cannot singly require dismissal of Mediacom's Amended Intervening Complaint.   However, the district court clearly placed too much weight on the opinion.   The attorney general opinion was rendered, like the district court's decision, without the benefit of any discovery or fact determination.

In fact, OAG 08-007 is at direct odds with clear Kentucky case law by focusing on the right to access to public rights-of-ways instead of on the nature of the service rendered.    Furthermore, the Attorney General specifically noted that he did not opine about state or federal law

applicability.  *See*, OAG 08-007, footnote 1.  As a result, that attorney general opinion should be disregarded entirely.

The Attorney General opinion also makes an assumption about the provision of AT&T's cable television service.  The opinion states in footnote 2 that "…the question here concerns the provision of additional services, not the **construction** of new facilities…"  OAG 08-07, footnote 2 (emphasis added).  Like the district court, the Attorney General assumed that there will be no added burden to the public rights-of-way.  There has not been any discovery to support this factual conclusion.  As stated hereinabove, Mediacom believes that AT&T will in fact install new and different facilities in the rights-of-way as well as increase the burden on public roadways through the increase use of service and maintenance vehicles.

## VI. THE COURT DID NOT CONSIDER WHETHER THE AT&T-HOPKINSVILLE AGREEMENT WAS A "FRANCHISE" GRANTED IN VIOLATION OF THE KENTUCKY CONSTITUTION

In its holding, the district court states that "AT&T Kentucky's existing franchise permits it to use its current facilities to transmit IP video services to customers in Hopkinsville, *as outlined in the Agreement.*"  Memorandum Opinion, R.E. No. 39, pp. 5-6 (emphasis added).  The district court did not consider Mediacom's request for a declaration that the

Agreement was actually a franchise granted in violation of the Kentucky Constitution.

As explained hereinabove, a franchise contains a public interest element. The purpose of public bidding and due advertisement under the Kentucky Constitution are to ensure that the public can receive the best service available. As such, this Court should reverse the decision in full and remand so that Mediacom may properly pursue its claims.

Both *Eastern Kentucky Resources v. Arnett*, 934 S.W.2d 270 (Ky. 1996) and *BFI Waste Systems of North America, Inc. v. Huntington Woods Neighborhood Assoc., Inc.*, 134 S.W.3d 624 (Ky. App. 2004) hold that a franchise or privilege granted without advertisement and public bidding in violation of the requirements of the Kentucky constitution is void. The AT&T Agreement with Hopkinsville purports to award the special privilege and right of providing television service, which is subject to franchise under *Top Vision*.

In *BFI Waste Systems of North America, Inc.*, cited above, the Franklin County, Kentucky fiscal court entered into a contract with BFI, which reserved a certain amount of space in BFI's privately owned landfill for municipal solid waste generated in the unincorporated area of Franklin County ("Contract"). *BFI Waste Systems of North America, Inc.*, at 625-

41

626. Subsequently, BFI was awarded a franchise by Franklin County for the collection and disposal of municipal solid waste generated in the unincorporated area of the county. *Id.* at 626. Thereafter, the County sought to renew the Contract, and the new Contract contained provisions relating to term, fees, indemnification, and a certain amount of free disposal for the County. *Id.* at 626-627. The new Contract was not granted after due advertisement and public bidding pursuant to Section 164 of the Kentucky Constitution. *Id.* at 627. The trial court concluded that the new Contract created a franchise "affording special privileges or treatment to BFI in violation of the competitive bidding requirements of Section 164 of the Kentucky Constitution." *Id.* at 628. The Kentucky Court of Appeals stated that a franchise is "a right or privilege granted by a sovereign power to a party to do some act which such party could not do without a grant from the government." *Id.* at 630. The Kentucky Court of Appeals held that the new Contract "granted BFI the right or privilege to expand its Franklin County landfill" and that "[t]his right or privilege is not one that is enjoyed by the citizens in general." *BFI Waste Systems of North America, Inc.*, at 631. The AT&T-Hopkinsville Agreement granted AT&T rights and privileges that are not enjoyed by the citizens generally, and is void for failing to comply with

42

the competitive bidding requirements of Section 164 of the Kentucky Constitution.

Hopkinsville entered into the contract in its governmental capacity by and through its city council in full satisfaction of its claim that AT&T must have a television franchise before offering television services in Hopkinsville.[3]  Therefore, without the Agreement, Hopkinsville would have continued the litigation to force AT&T to obtain a television franchise. Because AT&T agreed to enter into the Agreement, Hopkinsville voluntarily dismissed its claims.  This is clearly form over substance.  The Agreement is a franchise without which AT&T would not be authorized to offer television service in Hopkinsville.

The Agreement is subject to the advertisement and public bidding requirements of the Kentucky Constitution.  Because those requirements were not met, the Agreement is void.  In *Arnett*, without advertisement or public bidding, Eastern Kentucky Resources (EKR) contracted with the county government for the right to construct and operate a landfill.  The

---

[3] Hopkinsville's Ordinance requires that the City "treat persons providing similar services similarly" and "to comply with the requirements of federal law." Hopkinsville Ordinance §100.02(A).  That same section affirmatively states that a franchise for one service does not allow an entity to provide other services, "the city requires ***individual authorizations*** for the provision of particular services (emphasis added)."

court noted that the purpose of Section 164 is to "give information to anyone who has an interest in the privilege to be sold, to allow citizens of the community to protect their rights and to enable the governmental entity to receive value for the privilege granted." *Arnett*, at 273 (*citing City of Princeton v. Princeton Elec. Light & Power Co.,* 179 S.W. 1074 (Ky. 1915)). The *Arnett* contract gave EKR special privileges not enjoyed by the general public. The court noted that "a franchise is a right or privilege granted by a sovereign power to a party to do some act which such party could not do without a grant from the government." *Arnett*, at 275.

Because the AT&T-Hopkinsville Agreement was negotiated and obtained secretly, in violation of Section 164 of the Kentucky Constitution, AT&T was able to secure an agreement that ignores the public. While this agreement may satisfy Hopkinsville, it ignores the public. The requirements under Chapter 100 of the Hopkinsville Code of Ordinances have been almost wholly ignored in the AT&T-Hopkinsville Agreement. Provisions protecting civil rights and addressing consumer protection and dispute resolution are not applicable to AT&T. Thus, the public has been ignored by the municipality. The purpose behind public bidding and advertisement was thwarted and has damaged the public interest.

At the same time, Hopkinsville has provided an unquestioned cost savings and competitive advantage to AT&T despite the fact that they are providing the same service as Mediacom. In the end, the district court's approval of this agreement will result in severe damage and disadvantage to state and local governments and consumers.

Because the decision failed to address one of Mediacom's claims on the merits, this Court must reverse and remand this matter so that Mediacom may properly pursue its claims.

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's dismissal of Mediacom's Amended Intervening Complaint and remand this case to the district court for further proceedings.

Respectfully submitted,

s/ Laurence J. Zielke
Laurence J. Zielke
Nancy J. Schook
David N. Hise
ZIELKE LAW FIRM PLLC
462 S. Fourth Street, Suite 1250
Louisville, KY 40202
Telephone: (502) 589-4600
Facsimile: (502) 584-0422
E-mail: lzielke@zielkefirm.com
E-mail: nschook@zielkefirm.com
E-mail: dhise@zielkefirm.com
*Attorneys for Intervening Plaintiff –
Appellant Mediacom Southeast LLC*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

Counsel for intervening plaintiff-appellant Mediacom Southeast LLC

hereby certifies that this brief complies with the type-volume limitation of

F.R.A.P. 32(a)(7)(B).  The word count tool of the Microsoft Word program

used to prepare this brief states that there are 8,971 words in the portions of

the brief to be included in the word count pursuant to F.R.A.P.

32(a)(7)(B)(iii).


s/ Laurence J. Zielke
Counsel for Intervening Plaintiff-Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6 Cir. R. 30(b), Mediacom Southeast LLC designates the following as relevant district court documents:

| District Court Docket Record Entry Number | Description |
|---|---|
| 1 | Hopkinsville's Complaint, which is attached as Exhibit A to Defendant's Notice of Removal |
| 6 | Motion to Intervene by NewWave Communications |
| 11 | Stipulation of Dismissal by Hopkinsville and the Kentucky League of Cities |
| 17 | NewWave Communications Complaint |
| 18 | Motion to Intervene by Mediacom |
| 24 | Amended Complaint by Mediacom |
| 28 | Notice of Voluntary Dismissal by NewWave Communications |
| 32 | Motion to Dismiss by AT&T |
| 36 | Response to Motion to Dismiss by Mediacom |
| 38 | Reply in Support of Motion to Dismiss by AT&T |
| 39 | Memorandum Opinion re: Motion to Dismiss |

| 40 | Order Granting Motion to Dismiss |
| 41 | Notice of Appeal by Mediacom |

## **CERTIFICATE OF SERVICE**

On October 19, 2010, I served Appellant's Brief on the following persons pursuant to 6 Cir. Rule 25(f)(1) by filing it electronically using the Court's ECF system, which will send by e-mail a Notice of Docket Activity to:

Geoffrey M. Klineberg
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street NW
Suite 400
Washington, D.C. 20036

Phillip W. Collier, Esq.
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202

Mary K. Keyer
Bellsouth Telecommunications, Inc. d/b/a AT&T Kentucky
601 W. Chestnut Street
Rm. 407
Louisville, KY 40203

s/ Laurence J. Zielke